UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARCUS A. GARZA, | ) | CASE NO. 10-52576-rbk |
| | ) | |
|     Debtor | ) | |
| | ) | |
| _____ | ) | _____ |
| | ) | |
| DEALER SERVICES CORPORATION, | ) | |
| | ) | |
|           Plaintiff | ) | |
| v. | ) | |
| | ) | Adv. Pro. No. _____ |
| MARCUS A. GARZA, | ) | |
| A/K/A MARCUS ANTONIO GARZA, | ) | |
| | ) | |
|     Defendant | ) | |
| | ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF A DEBT

The plaintiff in this action, Dealer Services Corporation ("DSC"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(4), 523(a)(6), and 727(b); and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, requests that the Court determine certain obligations of Marcus A. Garza a/k/a Marcus Antonio Garza ("Garza") to DSC to be nondischargeable. In support of its Complaint, DSC states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. On July 6, 2010 (the "Petition Date"), Garza filed in the Western District of Texas a Petition for relief under Chapter 7 of the United States Bankruptcy Code in Case No. 10-52576-rbk.

2. Garza listed his address in a written filing with this Court to be 1 Byron Nelson,

San Antonio, Texas 78257, and he may be served at that address. He was represented in the filing of the Petition for Relief by Sally Spears, whose business address is 8151 Broadway, #106, San Antonio, Texas 78209.

3. DSC is a Delaware corporation doing business in Texas and is a creditor of Garza in the underlying bankruptcy case.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

5. On or about January 10, 2006, DSC entered into a Note and Security Agreement (the "Note") with Liberty Pre-Owned Cars & Trucks, L.L.C. ("Dealer"), a Texas limited liability company doing business at 3253 SW Military Drive, San Antonio, Texas 78211. A true and accurate copy of the Note is attached hereto and incorporated herein as **Exhibit A**.

6. At all times relevant herein, Garza was the president and majority owner of Dealer.

7. At all times relevant herein, Garza was directly involved in the day-to-day business operations of Dealer.

8. Under the terms of the Note, DSC granted Dealer a line of credit in the amount of Two Hundred Thousand and no/100 Dollars ($200,000.00) for the purpose of purchasing inventory for Dealer's used car lot.

9. Under the terms of the Note, Dealer granted DSC a security interest in all of its assets and properties wherever located, including, without limitation, all equipment of any kind or nature; all vehicles, vehicle parts and inventory then owned or thereafter acquired; purchase money inventory, the purchase of which was financed or floorplanned by DSC for Dealer, of

whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts receivable, chattel paper, and general intangibles then owned or thereafter acquired by Dealer, together with the proceeds thereof; and all of Dealer's documents, books and records relating to the foregoing (the "Collateral").

10. DSC perfected its security interest in the Collateral by filing a UCC Financing Statement (the "Financing Statement") with the Texas Secretary of State. A true and accurate copy of the Financing Statement is attached hereto and incorporated herein as **Exhibit B.**

11. As a condition of extending credit to Dealer, DSC required Garza to execute an Individual Personal Guaranty (the "Guaranty") in favor of DSC, whereby Garza guaranteed prompt and full payment to DSC of all obligations of Dealer pursuant to the Note. A true and accurate copy of the Guaranty is attached hereto and incorporated herein as **Exhibit C.**

## COUNT I—DEFALCATION IN A FIDUCIARY CAPACITY

12. DSC realleges and incorporates by reference the allegations of paragraphs 1 through 11, the same as if set forth verbatim herein.

13. Between January 10, 2006, and July 14, 2008, DSC advanced funds to Dealer and to certain third parties on Dealer's behalf, at Garza's request, for the purchase of vehicles for Dealer's retail inventory as Collateral pursuant to the terms of the Note.

14. The funds advanced by DSC to Dealer and on Dealer's behalf were not repaid as agreed, and DSC declared the Note to be in default on or about July 18, 2008.

15. DSC has not recovered seven (7) of the seventeen (17) vehicles which had an outstanding balance as of July 18, 2008, and there are no vehicles remaining in Dealer's inventory. A list of the seven (7) missing vehicles (the "SOT Vehicles"), including each

vehicle's year, make, model, date floorplanned with DSC, and the principal balance remaining on each vehicle, is attached hereto and incorporated herein as **Exhibit D.**

16. Dealer has received full payment from the consumers who purchased the SOT Vehicles from Dealer.

17. Dealer has not repaid DSC the full amounts advanced by DSC for the purchase of the SOT Vehicles.

18. As of the Petition Date, the principal balance owed on the SOT Vehicles, excluding all interest and fees, was Forty-Seven Thousand, Five Hundred Nineteen and 88/100 Dollars ($47,519.88).

19. Dealer has paid nothing to DSC since the Petition Date.

20. Pursuant to Sections 3(f) and 4(e) of the Note (the "Trust Provisions"), all amounts received from the sales of any item of Inventory ("Sale Proceeds") were required to be held in trust for the sole benefit of DSC and were to be remitted promptly to DSC within forty-eight (48) hours of such sales.

21. The Trust Provisions of the Note created an express trust for the benefit of DSC, with a clearly identifiable trust res comprised of Sale Proceeds.

22. At all times relevant herein, Garza was the president and majority owner of Dealer.

23. Garza actively participated in the day to day operations of Dealer, including sales, inventory control, accounts receivable, and accounts payable.

24. Garza was the sole individual at Dealer who had the ability to comply with the Trust Provisions of the Note, or to breach the Trust Provisions by failing to hold Sale Proceeds in trust for DSC.

25. Garza therefore stood in a fiduciary relationship to DSC.

26. Garza was aware of the terms of Dealer's secured line of credit with DSC, as those terms were spelled out in the Note, which Garza executed in his capacity as president of Dealer.

27. Garza was aware of his fiduciary duty to hold the Sale Proceeds in trust for the benefit of DSC and to remit the Sale Proceeds to DSC within forty-eight (48) hours of such sales.

28. Garza breached his fiduciary duty to DSC by intentionally failing to deliver the Sale Proceeds of the SOT Vehicles to DSC, instead using those Sale Proceeds for other purposes.

29. Garza is liable to DSC for defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4), and the sum of Forty-Seven Thousand, Five Hundred Nineteen and 88/100 Dollars ($47,519.88) is therefore nondischargeable as DSC's actual damages relating to Garza's actions.

## COUNT II—WILLFUL AND MALICIOUS INJURY

30. DSC realleges and incorporates by reference the allegations of paragraphs 1 through 29, the same as if set forth verbatim herein.

31. DSC held a valid and perfected security interest in the SOT Vehicles and any Sale Proceeds therefrom.

32. Garza was aware of DSC's security interest in the SOT Vehicles and the Sale Proceeds therefrom.

33. At all times relevant herein, Garza controlled the day-to-day business operations of Dealer.

34. Garza solely, willfully and intentionally determined how the Sale Proceeds from the SOT Vehicles would be used.

35. At the time Dealer received the Sale Proceeds from the SOT Vehicles, Garza knew that Dealer was in financial distress.

36. Garza controlled the finances of Dealer and had ultimate authority and responsibility for issuing payments to Dealer's creditors.

37. Garza failed to pay the Sale Proceeds from the SOT Vehicles to DSC.

38. Garza's failure to pay the Sale Proceeds to DSC was deliberate.

39. Garza knew or should have known that his failure to pay the Sale Proceeds to DSC was substantially certain to cause harm to DSC, as neither Dealer nor Garza had any alternative source to repay DSC for the converted Sale Proceeds.

40. Garza knew or should have known that his failure to pay the Sale Proceeds to DSC was contrary to commonly accepted duties in the ordinary relationships among floor plan financers and floor plan borrowers.

41. Garza, through the conduct described above, willfully and maliciously injured DSC, resulting in actual damages to DSC of not less than Forty-Seven Thousand, Five Hundred Nineteen and 88/100 Dollars ($47,519.88), exclusive of the interest and fees DSC could have earned on that amount had it been lent to a different dealer.

42. Garza's debt to DSC which results from his willful and malicious injury to DSC is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

## COUNT III—WILLFUL AND MALICIOUS INJURY

43. DSC realleges and incorporates by reference the allegations of paragraphs 1 through 42, the same as if set forth verbatim herein.

44. DSC holds a valid and perfected security interest and mortgage in certain real property ("Property") of Garza, identified by Garza in his Schedules of Assets and Liabilities and

in his Statement of Financial Affairs at Question 10, and described in the Mortgage creating the security interest executed by Garza in favor of DSC, as mortgagee, on October 24, 2008, a true and correct copy of which is attached hereto as **Exhibit E,** and which is incorporated herein for all purposes. DSC asserts the lien created by the Mortgage executed by Garza continues to be a valid and subsisting lien on the Property, which continues to secure the indebtedness owed by Garza to DSC.

45.     Garza states in his answer to Question 10 of his Statement of Financial Affairs, that he engaged in certain transfers of real property, including the Property, with his uncle, Herman Ford. Garza states that in 2004 he started buying pieces of property and accumulated five (5) tracts with two (2) houses, which included the Property. Garza states he sold the five tracts, including the Property, to Herman Ford on December 28, 2007 for $100,000.00. Garza states that Herman Ford sold the five tracts, including the Property, back to Garza on April 17, 2008 for $120,000.00. Garza states he gave a security interest in the Property (Tracts 1, 3 and 4) to DSC on October 27, 2008, and, he states that DSC released its lien shortly thereafter. DSC asserts that Garza's statement in his Statement of Financial Affairs that DSC has released its lien against the Property is a false and untrue statement. Garza states that thereafter he sold the five tracts to Herman Ford on November 11, 2008 for $185,000.00. Contrary to Garza's statement in his Statement of Financial Affairs, DSC has not released its lien against the Property which secures Garza's debt to DSC. Garza did not pay to DSC any of the proceeds from the sale of the Property to his uncle, Herman Ford.

46.     At all times relevant herein, Garza had knowledge of DSC's lien and mortgage on the Property and any proceeds from its sale, and he had knowledge that DSC had not released its lien on the Property. Garza deliberately and intentionally sold the Property to his uncle, Herman

Ford, knowing that his act would necessarily injure the cognizable rights of DSC in its collateral, being the Property.

47. At all times relevant herein, Garza solely, willfully and intentionally determined how the sale proceeds of the Property would be used, and Garza deliberately did not pay any of the proceeds from the sale of the Property to DSC.

48. Garza knew or should have known that his failure to pay the sale proceeds to DSC was substantially certain to cause harm to DSC, as neither Dealer nor Garza had any alternative source to repay DSC for the converted Sale Proceeds, and, the sale of the Property would cloud DSC's interests and require DSC to pursue litigation to enforce its lien thereby causing DSC to incur fees, costs and expenses.

49. Garza's act of converting the Property encumbered by DSC's lien was wrongful and without just cause or excuse and he acted with actual knowledge or with reasonable foreseeability that his act would result in injury to the interests of DSC in the Property.

50. Garza, through the conduct described above, willfully and maliciously injured DSC, resulting in actual damages to DSC of not less than <u>Ninety-Seven Thousand, Eight Hundred Forty-Five and 74/100 Dollars ($97,845.74),</u>plus interest, costs, expenditures, fees and expenses, as more fully described in that judgment entered against Garza by the Marion Superior Court for the County of Marion in the State of Indiana in Cause Number 49D07-0811-CC-050488 on January 23, 2009.

51. Garza's debt to DSC which results from his willful and malicious injury to DSC is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

52. **Attorney Fees:** Pursuant to the terms of the loan documents and pursuant to the state statutory, DSC is entitled to recover its attorney fees and costs from Garza.

WHEREFORE, plaintiff Dealer Services Corporation respectfully requests that the Court enter judgment (i) declaring a portion of Garza's debt to Dealer Services Corporation to be non-dischargeable pursuant to one or more subsections of 11 U.S.C. Section 523(a); (ii) awarding Dealer Services Corporation judgment against Garza in an amount not less than Forty-Seven Thousand, Five Hundred Nineteen and 88/100 Dollars ($47,519.88) plus post-judgment interest, attorneys fees and costs of collection; and (iii) awarding Dealer Services Corporation judgment against Garza in an amount not less than the amount of Ninety-seven Thousand, Eight Hundred Forty-five and 74/100 Dollars ($97,845.74), plus interest, costs, expenditures, fees and expenses; and (iv) awarding Dealer Services Corporation such other and further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of October, 2010.

/s/ **_John W. Harris_**
State Bar No.09074300
John Wallis Harris
Frost Bank Tower, Suite 1452B
100 W. Houston Street
San Antonio, TX 78205-1418
210.227-1025 T
210.227-1035 F
E-mail: jwharris@johnwharrislaw.com

*Attorney for Dealer Services Corporation*